[Cite as *State ex rel. Sears Roebuck & Co. v. Indus. Comm.*, 131 Ohio St.3d 45, 2011-Ohio-6525.]

THE STATE EX REL. SEARS ROEBUCK & COMPANY, APPELLEE, *v.* INDUSTRIAL
COMMISSION OF OHIO ET AL., APPELLANTS.

[Cite as *State ex rel. Sears Roebuck & Co. v. Indus. Comm.*,

131 Ohio St.3d 45, 2011-Ohio-6525.]

*Workers' compensation—Industrial Commission abused its discretion by
ordering employer to pay a medical bill submitted by a claimant when the
claimant did not substantiate that the purpose of the office visit was
related to his injury—Court of appeals judgment affirmed.*

(No. 2010-0955—Submitted September 6, 2011—Decided December 20, 2011.)

APPEAL from the Court of Appeals for Franklin County,

No. 09AP-180, 2010-Ohio-1818.

_____

**Per Curiam**.

{¶ 1} We are asked to determine whether appellant Industrial
Commission of Ohio abused its discretion by ordering self-insured appellee, Sears
Roebuck & Company, to pay a medical bill submitted by appellant Timothy
Mathews for a 1998 doctor's visit. Upon review, we find that it did.

{¶ 2} Mathews was injured in an industrial accident on October 13,
1987, and a workers' compensation claim was allowed by Sears for torn muscles
in the left leg, tears of the buttocks and bladder, and internal injuries. For the next
five years, Mathews had extensive medical treatment. By 1993, however,
treatment had diminished considerably, with approximately ten visits total over
the next four years. The last injury-related bill submitted to either Sears or its
third-party administrator was paid on March 26, 1997.

{¶ 3} In March 1999, Sears's third-party administrator, Frank Gates
Service Company, received a letter from Mathews's attorney:

**{¶ 4}** "I am enclosing a copy of a billing Timothy A. Mathews received from Dr. Urbanosky of Greater Ohio Orthopedic Surgeons, Inc. relative to an examination of September 22, 1998. This was billed to your office for payment *and was rejected* on the basis that the claim had been inactive. As your files should reflect, Mr. Mathews has been under the care of one or more physicians at Greater Ohio Orthopedic Surgeons, Inc. His previous physician recently died and Dr. Urbanosky has taken over Mr. Mathews' care.

**{¶ 5}** "Is it really necessary to go further with regard to this billing to the extent that the claim needs to be activated and perhaps the hearing held? I trust that your good judgment will see that this bill is promptly paid and that Mr. Mathews be advised accordingly.

**{¶ 6}** "If your client is unwilling to pay this bill, please advise me immediately in order that we may take the appropriate action relative to this matter." (Emphasis added.)

**{¶ 7}** The invoice that accompanied the letter listed an amount due of $50 for an unspecified office exam and did not indicate what medical conditions or complaints prompted the visit. These omissions generated a follow-up letter from Frank Gates:

**{¶ 8}** "We are in receipt of your letter dated March 12, 1999 requesting the employer reconsider their position on the payment of the outstanding bill from Greater Ohio Orthopedic Surgeons for service date September 22, 1998.

**{¶ 9}** "We understand your concern regarding this one payment; however, Mr. Mathews has not received any medical treatment from this provider since February 6, 1996. The employer agrees to consider accepting payment for this date of service, but we request you provide us with the office notes to prove the relationship and diagnosis to his October 13, 1987 claim."

{¶ 10} All agree that Mathews's counsel never responded to this letter. Counsel never forwarded the requested information or requested a commission hearing.

{¶ 11} In early 2008, Mathews asked Sears to authorize further treatment. Sears's new third-party administrator, Helmsman Management Services, Inc., denied the request, relying on former R.C. 4123.52. Am.Sub.H.B. No. 238, 141 Ohio Laws, Part II, 2761, 2837. Under that statute, claim inactivity in excess of ten years permanently closed a workers' compensation claim. Because the last payment of expenses or compensation in Mathews's claim was in 1997, Helmsman informed Mathews that his workers' compensation claim was no longer open.

{¶ 12} In an effort to toll the statute, Mathews's new counsel revived the issue of the September 1998 doctor's visit and requested a commission hearing on the payment of that bill. Accompanying the motion were the doctor's notes from that appointment:

{¶ 13} "**CURRENT CONDITION**: Timothy * * * was involved in a severe crush-type injury to his pelvis and thighs back in October of 1987. * * * He did not require any pelvis or back surgery at the time and overall seems to have recovered well. * * * He states over the last two days or so his left leg has been feeling 'heavy' with associated tingling into the dorsum of his left foot. He states it feels as if his leg falls asleep. However, the tingling seems to be constant. He has minimal associated back pain or other radicular-type pains at this time.

{¶ 14} "* * *

{¶ 15} "**IMPRESSION**: Mild L5 radiculopathy on the left.

{¶ 16} "**PLAN**: He has been encouraged to take his Motrin on a regular basis * * *. In addition, he has been encouraged to maintain his regular activities within the limits of any pain which presently is minimal. I have encouraged aerobic-type activities, as well as abdominal exercises and gradual back muscle

strengthening-type exercises. I have encouraged him to minimize weight lifting-type activities which he wishes to begin at least until this numbness is resolved. He has been warned that being in his 30's he is, even without his prior injuries, at risk of having a disk herniation. Should this manifest itself with more pain or frank numbness or limping/weakness, I have encouraged him to return for further evaluation."

{¶ 17} A commission staff hearing officer ordered Sears to pay the outstanding bill:

{¶ 18} "By 04/21/1999 letter * * * the employer's third part[y] administrator, acknowledge[d] receipt of the [March 12, 1999] letter [from claimant's counsel] and stated that the payment would be considered upon submission of office notes. This letter does not constitute the denial of payment.

{¶ 19} "The Staff Hearing Officer has considered employer's four defenses to the payment of this bill, and finds none of them well taken.

{¶ 20} "First, the medical service is reasonably related to the allowed industrial injury. Claimant suffered severe internal injuries in the vicinity of the lower back. A referral to determine if a lower back injury was a part of those severe injuries was reasonable and indicated. Although no lower back injury is allowed in the claim, in the context of the location and severity of the claimant's other injuries, and his complaints at the time, this referral is a reasonable expense of the allowed industrial injury. This is demonstrated by the office notes of the medical service, notwithstanding the conclusion that the claimant did not have a medical condition which is a part of the allowed conditions in the claim."

{¶ 21} Sears filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission had abused its discretion in ordering the bill to be paid because the visit related to a low-back condition that was not allowed in Mathews's claim. The court agreed and issued a writ of

mandamus that vacated the decision and directed the commission to issue a new order denying payment of the bill.

{¶ 22} This cause is now before this court on appeals as of right by Mathews and the commission.

{¶ 23} Mathews seeks payment for the 1998 office visit generated by a low-back condition that has not been allowed in his claim. Typically, payment is properly denied when a condition has not been allowed. Appellants, however, insist that two cases in which treatment was authorized for a condition that had not been formally allowed in the claim support their position. Upon review, we find that those cases are distinguishable from the one at bar.

{¶ 24} In *State ex rel. Miller v. Indus. Comm.* (1994), 71 Ohio St.3d 229, 643 N.E.2d 113, we approved a weight-loss program in a claim that had not been formally allowed for obesity. There, the claimant's physician sought authorization for a weight-loss program, based on his belief that claimant's obesity was compromising her recovery from her allowed back condition. The commission did not dispute the doctor's opinion but felt that because obesity was not an allowed condition in the claim, treatment could not be authorized.

{¶ 25} We disagreed. We stressed, among other things, that obesity was unique from an allowance standpoint because it was a generalized condition that could not be restricted to a specific body part. Id. at 233. This, in turn, made it less amenable to the formal allowance mechanics of R.C. 4123.84, a characteristic that Mathews's lumbar radiculopathy does not share.

{¶ 26} Appellants also cite *State ex rel. Jackson Tube Servs., Inc. v. Indus. Comm.*, 99 Ohio St.3d 1, 2003-Ohio-2259, 788 N.E.2d 625. In *Jackson Tube*, the claimant's workers' compensation claim had been allowed for a torn rotator cuff. Continuing shoulder problems, however, as well as a failure to have a shoulder arthroscopy performed, prompted his doctor to express concern that "substantial pathology [was] still being missed," most likely a secondary tear. Id. at ¶ 14. For

these reasons, he sought permission both to perform exploratory surgery to determine the cause of claimant's persistent symptoms and to fix the problem he found.

{¶ 27} The employer objected to the procedure, arguing that the shoulder conditions identified by the doctor as the potential source of claimant's continuing problems had not been allowed in the claim. The commission allowed the surgery nonetheless, and we upheld that decision. We acknowledged that the issue was a difficult one, with compelling arguments being made by both sides:

{¶ 28} "On one hand, claimant could not move for additional allowance beforehand, since without the surgery, the problematic conditions could not be identified. On the other hand, self-insured JTS questions its recourse when ordered to pay for surgery that ultimately reveals any conditions to be nonindustrial. It also fears that payment could be interpreted as an implicit allowance of all of the conditions in the postoperative diagnosis." Id. at ¶ 22.

{¶ 29} Addressing the latter concern first, we stressed that an employee could not "circumvent additional allowance by simply asserting a relationship to the original injury. The problem in this case, however, is that because any conditions are internal, claimant could not know what conditions to seek additional allowance for without first getting the diagnosis that only surgery could provide." Id. at ¶ 25.

{¶ 30} We were additionally persuaded by the physician's consistent assertion that whatever condition was the source of the claimant's shoulder complaints, that condition was related to the industrial injury. We also noted that claimant's doctor had indicated that irrespective of any other conditions that may be contributing to claimant's problems, the allowed condition of torn rotator cuff had to be surgically repaired. To deny the surgery simply because more conditions could be found would conflict with our earlier decision in *State ex rel. Griffith v. Indus. Comm.* (1999), 87 Ohio St.3d 154, 718 N.E.2d 423. We closed,

however, by clarifying that if other shoulder conditions were indeed found, further treatment or compensation could not be authorized unless the conditions were then additionally allowed in the claim.

**{¶ 31}** Unlike Mathews, the claimant in *Jackson Tube* was not being treated for a condition arising in a part of the body that was not previously alleged to have been injured. Not only had the latter claimant consistently alleged a shoulder condition, his workers' compensation claim included one. This, coupled with medical evidence discussing the probability of other related but undiagnosed shoulder conditions and a history of unresolved shoulder complaints since the date of injury, greatly enhanced the likelihood that any newly discovered shoulder conditions were connected to the industrial injury. Under those circumstances, surgical authorization was reasonable—despite the lack of formal allowance beforehand—in order to diagnose with specificity what those other related conditions were.

**{¶ 32}** In contrast, Mathews's 1998 office visit was related to a part of the body that he never before alleged was injured. Unlike in *Jackson Tube*, there is no evidence properly before us that establishes a history of low-back symptoms. According to Dr. Urbanosky, Mathews's back symptoms began just two days before his office visit. We find it significant that in the 11 years between his industrial injury and the disputed office visit, there is no record of any low-back complaints.

**{¶ 33}** More importantly, there is no evidence establishing, or even suggesting, a potential connection between his 1987 injury and his 1998 back symptoms. To the contrary, Dr. Urbanosky indicated that Mathews had "recovered well" from his industrial injury. She also stated that irrespective of any other factor, Mathews's age alone put him at risk for the type of disc problems that could cause radiculopathy.

**{¶ 34}** Appellants assert that a judgment in Sears's favor rewards it for abusing its responsibilities as a self-insured employer. They accuse Sears of failing to affirmatively act on the disputed bill when it was first presented for payment in 1999. This argument, however, lacks merit. Sears's third-party administrator asked Mathews's former counsel to provide information to substantiate the purpose of the office visit, but counsel never responded. Counsel also never requested a commission hearing, which could have conclusively resolved the matter. Accordingly, we find no merit to appellants' claim that Sears acted inappropriately.

**{¶ 35}** The judgment of the court of appeals is affirmed.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Reminger Co., L.P.A., and Kevin R. Sanislo, for appellee.

Butler, Cincione & DiCuccio and Matthew P. Cincione, for appellant Timothy Mathews.

Michael DeWine, Attorney General, and Colleen C. Erdman, Assistant Attorney General, for appellant Industrial Commission.

_____