[Cite as *State ex rel. Staples The Office Superstore E., Inc. v. Indus. Comm.*, 2013-Ohio-4339.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Staples The Office      :
Superstore East, Inc.,

     :

        Relator,

     :            No. 12AP-879

v.

     :            (REGULAR CALENDAR)

Industrial Commission of Ohio and
Donna Boyd-Shawver,      :

        Respondents.      :

---

D E C I S I O N

Rendered on September 30, 2013

---

*Dawson Disantis & Myers, LLC, Shane M. Dawson* and
*Paul V. Disantis*, for relator.

*Michael DeWine*, Attorney General, and *Justine S. Casselle,*
for respondent Industrial Commission of Ohio.

*Larrimer & Larrimer,* and *Thomas L. Reitz,* for respondent
Donna Boyd-Shawver.

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

KLATT, P.J.

{¶ 1} Relator, Staples the Office Superstore East, Inc., commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order granting respondent, Donna Boyd-Shawver ("claimant"), temporary total disability ("TTD") compensation beginning November 29, 2011, and to enter an order denying said compensation.

{¶ 2}   Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto.  The magistrate found that:  (1) the commission's reliance on the November 23, 2011 report of Dr. Cummings is foreclosed because it is based in part on a non-allowed low back condition; (2) Dr. Cummings' progress reports mandate evidentiary elimination of his C-84s and MEDCO-14s; and (3) a portion of the award cannot be saved by the commission's reliance on the report of Dr. Berlet.  Therefore, the magistrate has recommended that we grant relator's request for a writ of mandamus.

{¶ 3}   The commission has filed objections to the magistrate's decision.   The commission first asserts that the magistrate erred in concluding that the commission relied on the claimant's low back pain in granting TTD compensation.  We disagree.

{¶ 4}   As noted by the magistrate, a newly-identified condition that may be related to an industrial injury must be formerly recognized in the claim if that condition is to become a basis for compensation.  *State ex rel. Jackson Tube Serv., Inc. v. Indus Comm.*, 99 Ohio St.3d 1, 2003-Ohio-2259.  Here, the commission relied upon Dr. Cummings' reports in granting TTD.  Dr. Cummings' reports strongly suggest that the claimant's low back pain was a factor in reaching his opinion that the claimant needed a seated-only work restriction.  Dr. Cummings makes a number of references to problems the claimant was experiencing with her lumbar spine, including pain on movement, limited motion, and tenderness to palpation.  In his November 23, 2011 narrative report following his examination of the claimant, he stated that:

> Also, due to the amount of standing and walking Donna is required to do, in spite of her restrictions, she has developed low back pain as documented above. Due to Donna's progressive pain symptoms, she will be restricted to a seated job assignment.

{¶ 5}   These portions of Dr. Cummings' report strongly suggest that claimant's low back pain was part of the basis for his imposition of the work restriction.  Although Dr. Cummings' reports indicate that there is a causal relationship between the claimant's allowed claim ("left fibula fracture; peroneal tendonitis, left side") and her low back symptoms, there is no allowed claim for any condition involving the claimant's lower

back. Therefore, Dr. Cummings does not clearly indicate that the seated work restriction was solely based upon the allowed conditions in the claim. Therefore, the commission abused its discretion by relying on Dr. Cummings' opinion in awarding TTD compensation.

{¶ 6} The commission also argues that the lower back pain noted by Dr. Cummings is not a recognized compensable injury. According to the commission, simply because Dr. Cummings noted the claimant's lower back pain, does not indicate that the allowed ankle conditions were not the sole basis for the work restriction. Again, we disagree.

{¶ 7} Although Dr. Cummings does refer to lower back pain, that reference must be viewed in the context of his physical examinations where he noted the problems with claimant's lumbar spine, including limited motion and tenderness to palpation. His examination notes are strongly indicative of a lower back injury. Because the claimant did not have an allowed claim based upon a lower back injury, we overrule the commission's first objection.

{¶ 8} In its second objection, the commission contends that none of Dr. Cummings' C-84s or MEDCO-14s list any cause for disability other than the allowed conditions, and thus, they do not contradict Dr. Cummings' ultimate conclusion. Therefore, the commission argues that the magistrate erred in concluding that the C-84s and MEDCO-14s should be eliminated from evidentiary consideration. Again, we disagree.

{¶ 9} Although the mere presence of a non-allowed condition in a claim for TTD compensation does not in itself destroy the compensability of the claim, the claimant must meet her burden of showing that an allowed condition independently caused the disability. *State ex rel. Bradley v. Indus. Comm.*, 77 Ohio St.3d 239, 242 (1997). Medical reports can be so inconsistent that they cannot constitute some evidence supporting a commission's decision. *State ex rel. Lopez v. Indus. Comm.*, 69 Ohio St.3d 445 (1994); *State ex rel. M. Weingold & Co. v. Indus. Comm.*, 97 Ohio St.3d 44, 2002-Ohio-5353.

{¶ 10} To the extent that Dr. Cummings' C-84s and MEDCO-14s indicate that the claimant's allowed claims independently caused the need for the seated restriction, they conflict with his November 23, 2011 examination and progress report in which the low

back pain is identified as at least a contributing factor for imposing the seated job restriction. There is no allowed condition relating to the claimant's lower back. For this reason, we overrule the commission's second objection.

{¶ 11} In its third and final objection, the commission contends that the magistrate erred in concluding that Dr. Berlet's opinion is insufficient evidence to support the commission's decision. The commission's first argument in support of this objection is that relator waived any argument that Dr. Berlet's opinion was insufficient because he failed to file a C-84 or a MEDCO-14. However, the commission mischaracterizes the magistrate's reasoning in arguing that relator failed to make this argument administratively. The magistrate's reasoning is not premised on Dr. Berlet's failure to specifically submit a C-84 or MEDCO-14 form. Rather, the magistrate concluded that Dr. Berlet's opinion is not some evidence because (1) he did not offer an opinion as to the claimant's extent of disability that is retrospective of the date of his examination; and (2) he failed to offer an estimated return-to-work date or to prospectively opine as to the estimated duration of the disability. Relator did argue administratively and before the magistrate that Dr. Berlet's opinion is not some evidence supporting an award of TTD. Therefore, we disagree with the commission's contention that relator waived this challenge to Dr. Berlet's opinion.

{¶ 12} The commission also argues that Dr. Berlet's February 20, 2012 treatment note supports his opinion that claimant is TTD until, at least, she receives a new brace and until, at most, revision surgery is performed on her left ankle. Although Dr. Berlet does suggest a general timeframe of disability in his February 20, 2011 report, we agree with the magistrate that his failure to opine as to a specific period of disability renders this report insufficient to support an award of TTD.

{¶ 13} Lastly, the commission points to Dr. Berlet's April 3, 2012 report as evidence that Dr. Berlet did specify a definite prospective period of disability. However, the commission did not rely on this report in awarding TTD. Because the commission did not rely on this report, there was no reason for the magistrate to address it. Moreover, we note that the April 3, 2012 report references only a perspective period of disability following revision surgery, which had not yet been performed or even scheduled. Therefore, the November 3, 2012 report could not serve as an independent basis to

support the commission's grant of TTD in any event. For these reasons, we overrule the commission's last objection.

{¶ 14} The claimant also filed objections to the magistrate's decision. In her first objection, the claimant contends that the magistrate erred in concluding that Dr. Cummings' physical restrictions were based on the non-allowed low back pain. Essentially, the claimant argues that low back pain was a secondary problem, not her primary complaint, and not the basis for the restrictions imposed by Dr. Cummings. For the reasons noted in response to the commission's first objection, we disagree. A fair reading of Dr. Cummings' November 23, 2011 report indicates that the restrictions he imposed were based in part on pain she was experiencing in her lower back. Therefore, Dr. Cummings' November 23, 2011 report does not establish that he imposed the seated work restriction based solely on the allowed conditions in the claim. Therefore, we overrule the claimant's first objection.

{¶ 15} In her second objection, the claimant contends that the magistrate erred in finding Dr. Cummings' certification of TTD is inconsistent with his medical examinations. We overrule this objection for the same reason that we overruled the commission's second objection. Dr. Cummings' various reports are inconsistent and cannot serve as some evidence to support the commission's grant of TTD.

{¶ 16} In her third and final objection, the claimant contends that the magistrate erred in concluding that Dr. Berlet's opinion is not some evidence supporting the commission's decision to award TTD. The claimant argues that Dr. Berlet's February 20, 2012 report directly linked the C-84 signed by Dr. Cummings on November 23, 2011 with his opinion that the claimant's restriction was caused solely by the allowed conditions. However, as we previously noted, Dr. Berlet's failure to opine as to a specific period of disability in his February 20, 2012 report renders his opinion insufficient to support an award of TTD. Therefore, we overrule the claimant's third objection.

{¶ 17} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we grant relator's request for a writ of mandamus ordering the commission to vacate the award of TTD

beginning November 29, 2011 and to enter an order that denies the request for TTD compensation.

*Objections overruled; writ of mandamus granted.*

O'GRADY, J., concurs.
TYACK, J., dissents.

TYACK, J., dissenting.

{¶ 18} I strongly disagree with our magistrate and the majority of this panel. Instead, I agree with the view of the hearing officers at the Industrial Commission that Donna Boyd-Shawver is entitled to temporary total disability compensation ("TTD").

{¶ 19} Everyone agrees that Donna Boyd-Shawver cannot go back to her old job which required her to be on her feet for seven hours per day. The fracture of her left fibula and peroneal tendonitis which she suffered in 2009 have made that so. The pain she suffered when she put her weight on her left side caused her to try to avoid putting weight on that side. As a result, she started having problems on her right side and low back.

{¶ 20} Staples refused Donna's request for surgery to remedy her pain and referred her for an independent medical examination ("IME") by John S. Wolfe, M.D. Dr. Wolfe found peroneal tendonitis, which is an inflammation of the tendons attached to or near the fibula. This condition has now been recognized. Dr. Wolfe agreed that Donna could not stand for more than two to four hours per day based upon her peroneal tendonitis. Staples did not offer her a job where she could sit. Thus, based on the IME requested by Staples, Donna was entitled to TTD. She could not work at her old job based solely upon a recognized condition.

{¶ 21} This IME should have ended discussion of the issue of TTD, but Staples is a self-insured employer and the money it pays for TTD gets subtracted from the profits Staples realizes. Therefore, it contested the TTD issue, even to the point of filing this mandamus action after losing at all levels of the Industrial Commission.

{¶ 22} The magistrate apparently did not consider the fact that Dr. Wolfe reported that Donna Boyd-Shawver's condition indicated she was entitled to TTD, despite the indication in the district hearing officer's ("DHO") order that TTD was granted partly because of the report of Dr. Wolfe. Again, she could not do her job based on a recognized condition.

{¶ 23} The magistrate is also wrong in indicating that Dr. Berlet saw Donna Boyd-Shawver only in February 2012 and discounted the value of Dr. Berlet's report for this incorrect reason. Dr. Berlet's report indicates that he had seen Donna one year earlier and her condition was unchanged. The complaint filed by Staples acknowledges this when it alleges Donna Boyd-Shawver was "reevaluated by Gregory Berlet, M.D." on February 20, 2012.

{¶ 24} Again, the magistrate's decision includes a reference to Dr. Berlet's report which clearly indicates more than one office appointment. The part of the report excerpted at ¶ 33 of the magistrate's decision also supports an award of TTD for Donna. The report of Dr. Berlet was properly cited by the staff hearing officer as a basis for granting TTD.

{¶ 25} Further, I disagree with the magistrate about whether the low back pain needs to be separately recognized as a separate condition, but the reports of Dr. Wolfe and Dr. Berlet rely on the peroneal tendonitis, not low back pain.

{¶ 26} I would refuse to grant any writ of mandamus. If granting a writ, I certainly would not make it a full writ but ask the commission to address in more detail why the reports of Dr. Wolfe and/or Dr. Berlet support the granting of TTD. The majority of this panel adopts a magistrate's decision which is seriously flawed as to critical facts and which, in part, based upon those flaws, makes an inadequate addressing of the legal issues. As a result, the majority reaches the wrong decision about granting a writ. I dissent.

———————————

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

State ex rel. Staples The Office            :
Superstore East, Inc.,

                                            :
          Relator,

                                            :          No. 12AP-879
v.
                                            :          (REGULAR CALENDAR)
Industrial Commission of Ohio and
Donna Boyd-Shawver,                         :

          Respondents.                      :

---

### MAGISTRATE'S DECISION

#### Rendered on April 22, 2013

---

*Dawson Disantis & Myers, LLC, Shane M. Dawson* and
*Paul V. Disantis*, for relator.

*Michael DeWine*, Attorney General, and *Justine S. Casselle,*
for respondent Industrial Commission of Ohio.

*Larrimer & Larrimer,* and *Thomas L. Reitz,* for respondent
Donna Boyd-Shawver.

---

### IN MANDAMUS

{¶ 27} In this original action, relator, Staples the Office Superstore East, Inc., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding to respondent Donna Boyd-Shawver ("claimant") temporary total disability ("TTD") compensation beginning November 29, 2011, and to enter an order denying the compensation.

<u>Findings of Fact</u>:

{¶ 28} 1. On August 12, 2009, claimant injured her left ankle while employed as an inventory controller for relator, a self-insured employer under Ohio's Workers' Compensation Laws. On that date, claimant slipped and fell while at work.

{¶ 29} 2. The industrial claim (No. 09-843191) is allowed for: "left fibula fracture; peroneal tendonitis, left side."

{¶ 30} 3. On November 23, 2011, attending physician Wayne J. Cummings, D.O., examined claimant during an office visit at WorkHealth West. Dr. Cummings issued a three-page narrative report, stating:

> Current Work Status: Donna is currently working full time on modified duty.
>
> OCCUPATIONAL HISTORY: Donna is scheduled to work 8 hours per day. Five days a week. She works first shift. She works overtime hours occasionally. Donna's job is classified as "medium" according to the DOL standard, which requires her to lift up to 50 pounds occasionally and/or up to 20 pounds frequently, and/or up to 10 pounds constantly. She performs repetitive work with her feet, back, legs and arms 8 hours per day. She stands for 7 hour(s) during her shift. She states that she has not had a similar work related injury/illness. She denies non-work related activities that could contribute to this problem. She does not work another job.
>
> HISTORY OF INITIAL VISIT: Donna's primary problem is pain located in the left ankle. It has been about 17 months since the onset of the pain. She has noticed that it is made worse by walking. It is improved with elevation. She feels it is not improving. Her pain level is 5/10. Hurt ankle last August. Had surgery January 27 fixed tendons moving them under the ankle. Removed a bone. Has been in 2 hard cast and is still in a aircast. Still in a lot of pain. Has troubling walking. Has shooting pains in ankle. Sometimes has numbness and tingling.
>
> PROGRES NOTE- June 23, 2011: IW here for f/u to left leg injury. Current pain level today is 5/10 and increases to a sharp pain in left ankle with certain movements. Confirmed has had no other testing or physician referrals since last time she was here. IW needs a refill on the percocet. Currently working full time on restricted duty.

PROGRESS NOTE- July 22, 2011: Here with injury to left ankle. Condition is the same as above. Pain increases through out the day. Pain level today is 5/10. Wearing a brace.

PROGRESS NOTE- August 26, 2011: Here with injury to left ankle. States she is the same. Last script has not been approved. Wearing brace. No new testing/consults/PT since last visit. Pain level today is 5/10.

PROGRESS NOTE- September 23, 2011: Here with injury to left ankle. Pain level 8/10. Still awaiting approval for surgery. Pain seems to be worsening. Patient is very frustrated.

PROGRESS NOTE- October 21, 2011: As Per IW Current meds are the same. She says that her right leg is starting to hurt with her lower back from putting all the weight on that side. No MRI or x[-]rays sin[c]e the last time she was here. She is working light duties. She is doing worse. Pain scale today is 5.

REVIEW OF SYSTEMS:

Constitutional: POSITIVE for abnormal gait, trouble sleeping.
Musculoskeletal: POSITIVE for joint pain, joint stiffness, muscle weakness.
Neurological: POSITIVE for burning sensation. Negative for numbness, tingling.

EXAMINATION:

Constitutional: Donna is right handed. She appears to be healthy. Her body habitus is mesomorphic. Her complexion is normal. She looks to be her stated age. Donna is able to move with difficulty. Condition is exacerbated.

Left Foot and Ankle: Dorsiflexion can be performed with pain. Eversion can be performed with pain. Inversion can be performed with pain. Dorsalis pedis pulse is present. Posterior tibialis pulse is present. Range of motion is limited. Swelling is present over the lateral malleolus. Tenderness is present over the peroneal tendons. No change.

Lumbar Spine: Bruising is absent. Movement of the low back causes pain. Range of motion is limited. Muscle spasm is

apparent in the right paraspinous muscles. Tenderness to palpation is present over the right paraspinous muscles.

DIAGNOSIS: 1. Fracture fibula, closed (823.81). 2. Ankle Sprain, Left (845.00).

DISCUSSION: Donna's medications were recently reviewed by Dr. Hauser (IME)[.] He incorrectly stated that Donna was taking Oxycontin as well as Nucynta. This is incorrect. Donna has a surgical problem which has resulted in chronic pain. She is prescribed the lowest strength Percocet to be taken up to 3 times daily, along with a one-a-day anti-inflammatory.

Also, due to the amount of standing and walking Donna is required to do, in spite of her restrictions, she has developed low back pain as documented above. Due to Donna's progressive pain symptoms, she will be restricted to a seated job assignment.

PLAN OF CARE: Dr. Gregory Berlett [sic] has recommended surgery. C-9 submitted and denied. (11/23)

MEDICAL CAUSATION: The cause of this problem is related to work activities.

RECOMMENDED WORK STATUS: Donna's recommended work status is restricted duty. The effective date for this work status is 11/23/2011.

{¶ 31} 4. On November 23, 2011, Dr. Cummings completed a "Physician's Report of Work Ability" ("MEDCO-14"), a form provided by the Ohio Bureau of Workers' Compensation ("bureau"). On the MEDCO-14, Dr. Cummings indicated by his mark that claimant could return to work with restrictions. Dr. Cummings indicated that claimant must be allowed to change positions as needed and work no more than an eight hour day. He further indicated that claimant now requires a "[s]eated job assignment."

{¶ 32} 5. Apparently, Dr. Cummings did not complete a C-84 that lists November 23, 2011 as the date of last examination.

{¶ 33} 6. Following a December 23, 2011 examination, Dr. Cummings issued a type-written progress note, stating:

PROGRESS NOTE- December 23, 2011: States left ankle is the same. Employer doesn't have any light duty. No new testing/consults since last visit. Pain level today is 5/10.

REVIEW OF SYSTEMS:

Constitutional: POSITIVE for abnormal gait, trouble sleeping.
Musculoskeletal: POSITIVE for joint pain, joint stiffness, muscle weakness.
Neurological: POSITIVE for burning sensation. Negative for numbness, tingling.

EXAMINATION:

Constitutional: Donna is right handed. She appears to be healthy. Her body habitus is mesomorphic. Her complexion is normal. She looks to be her stated age. Donna is able to move with difficulty.

Left Foot and Ankle: Dorsiflexion can be performed with pain. Eversion can be performed with pain. Inversion can be performed with pain. Dorsalis pedis pulse is present. Posterior tibialis pulse is present. Range of motion is limited. Swelling is present over the lateral malleolus. Tenderness is present over the peroneal tendons. No change.

Lumbar Spine: Bruising is absent. Movement of the low back causes discomfort. Range of motion is mildly limited. Tenderness to palpation is present over the right paraspinous muscles.

DIAGNOSIS: 1. Fracture fibula, closed (823.81). 2. Ankle Sprain, Left (845.00).

DISCUSSION: Due to Donna's progressive pain symptoms, she has been restricted to a seated job assignment.

PLAN OF CARE: Dr. Gregory Berlett [sic] has recommended surgery. C-9 submitted and denied. (12/23)

MEDICAL CAUSATION: The cause of this problem is related to work activities.

RECOMMENDED WORK STATUS: Donna's recommended work status is restricted duty. The effective date for this work status is 12/23/2011.

(Emphasis sic.)

{¶ 34} 7. On December 23, 2011, Dr. Cummings completed another MEDCO-14 which contains the same restrictions as contained on the November 23, 2011 MEDCO-14. Among the restrictions was a "[s]eated-job assignment."

{¶ 35} 8. On December 23, 2011, Dr. Cummings completed a C-84 certifying that, beginning November 28, 2011, claimant was unable to return to her former position of employment as an inventory controller but was able to work at a "[s]eated job assignment." January 30, 2012 is listed as the estimated return-to-work date. December 23, 2011 is listed as the date of last examination.

{¶ 36} The C-84 form asks the physician to "[l]ist diagnosis(es) for allowed conditions being treated, which prevent return to work." In response, Dr. Cummings wrote: "1. Fracture fibula, closed (823.81), 2. Ankle Sprain, Left (845.00)."

{¶ 37} 9. On January 17, 2012, claimant moved for TTD compensation on form C-86. On the C-86 form, claimant, through counsel, stated:

> Per the 11/23/2011 report of Dr. Wayne Cumming[s], the claimant was restricted to a seated job assignment. The self-insured employer allowed her to work one week on that restriction. The Injured [W]orker was then told that employer does not offer a light duty position, and has not received compensation since that time. Therefore, we respectfully request that temporary total compensation be granted.

{¶ 38} In support of her motion, claimant submitted the C-84, the MEDCO-14s, and the November 23, 2011 narrative report of Dr. Cummings.

{¶ 39} 10. On January 18, 2012, at relator's request, claimant was examined by orthopedist John S. Wolfe, M.D. In his four-page narrative report, Dr. Wolfe opines:

> I did not identify a peroneal tear or left ankle instability and I feel these should not be allowed in the claim. I found peroneal tendonitis on the left side to be present and I think it should be allowed in the claim.
>
> * * *
>
> I do not believe the claimant to be capable of returning to her position of employment. Because of chronic pain issues and unsuccessful surgery, she has lost the ability to be on her feet more than 2-4 hours per day. She has lost the ability to safely

climb, kneel and squat because of pain in her ankle. Those are also her basic restrictions and I look for them to be permanent in duration.

{¶ 40} 11. Following a February 17, 2012 examination, Dr. Cummings issued a progress report, stating:

PROGRESS NOTE- February 17, 2012: States left ankle is the same. Had a hearing on 1-31-12. Has an [appointment] with Dr[.] Berlet on Monday 2-20-12 and Dr[.] Lin on 2-21-12. Next hearing will be scheduled after Dr[.] Berlet and Dr[.] Lin[']s [appointments]. No new testing since last visit. Pain level today is 5/10.

REVIEW OF SYSTEMS:

Constitutional: POSITIVE for abnormal gait, trouble sleeping.
Musculoskeletal: POSITIVE for joint pain, joint stiffness, muscle weakness.
Neurological: POSITIVE for burning sensation. Negative for numbness, tingling.

EXAMINATION:

Constitutional: Donna is right handed. She appears to be healthy. Her body habitus is mesomorphic. Her complexion is normal. She looks to be her stated age. Donna is able to move with difficulty.

Left Foot and Ankle: Dorsiflexion can be performed with pain. Eversion can be performed with pain. Inversion can be performed with pain. Dorsalis pedis pulse is present. Posterior tibialis pulse is present. Range of motion is limited. Swelling is present over the lateral malleolus. Tenderness is present over the peroneal tendons. No change.

Lumbar Spine: Bruising is absent. Movement of the low back causes discomfort. Range of motion is mildly limited. Tenderness to palpation is present over the right paraspinous muscles.

DIAGNOSIS: 1. Fracture ankle, lateral malleolus (closed), left (824.2).

DISCUSSION: Due to Donna's progressive pain symptoms, she has been restricted to a seated job assignment.

> PLAN OF CARE: Dr. Gregory Berlett [sic] has recommended surgery. C-9 submitted and denied. (2/17) Patient had an IME on 1/18. Ortho F/U scheduled.
>
> MEDICAL CAUSATION: The cause of this problem is related to work activities.
>
> RECOMMENDED WORK STATUS: Donna's recommended work status is restricted duty. The effective date for this work status is 1/17/2012.

(Emphasis sic.)

{¶ 41} 12.  Following the February 17, 2012 examination, Dr. Cummings completed another C-84 and MEDCO-14.  The C-84 extended the period of TTD to March 30, 2012. Both documents restrict claimant to a "[s]eated job assignment."  As earlier noted, the C-84 form asks the physician to "[l]ist diagnosis(es) for allowed conditions being treated, which prevent return to work."  In response, Dr. Cummings wrote:  "1. Fracture, ankle, lateral malleolus (closed), left (824.2)."

{¶ 42} 13.  On February 20, 2012, at claimant's own request, she was examined by Gregory C. Berlet, M.D., at the Orthopedic Foot & Ankle Center located in Westerville, Ohio.  Dr. Berlet issued a two-page narrative report, stating:

> Ms. Boyd Shawver is in today and believe it or not it has been a year since I have seen her. That is really hard to believe because when I saw her a year ago she was a patient who had very legitimate discomfort. Her story is well documented. She had a work associated injury of 8/12/2009. She had surgery performed by Dr. Song and it did not work. This is not the fault of the patient but her ankle is not good. I rendered the opinion last year that she had recurrent ankle instability that we were going to need to address this and somehow she has been caught up in the bureaucracy of it all over this last year.
>
> So where we are now is she is no longer able to work. Dr. Cummings had recommended that she be in a sitting position because the ankle was so bad. Again, this patient is motivated it is the fact that her work associated injury has taken her capabilities away from her that had her at a desk job. Unfortunately, they do not appear to have work for her so she has not been in there since November. She is not getting any wages and she is still left with this physical problem related to her work injury.

Where we are today then is she comes in limping, she is wearing her brace, in every way the same patient I saw a year ago. She is varus unstable when I test her. She has some swelling around the peroneal tendons so I would recommend that we add peroneal tendonitis to her claim.

I updated her x-rays three views standing. It shows a single anchor in the fibula. Thankfully, the ankle is not turning to varus yet.

I am strongly recommending MRI imaging of this ankle. What I want to see is what is left of the anterior talofibular ligament, what is left of the calcaneofibular ligament, are the peroneal tendons are torn or are they just inflamed. Again, it is my opinion that at some point the appropriate thing to do here is revision surgery for her ankle giving her a fighting chance to be able to earn a living and take care of her family.

So I will order the MRI today. I am going to add peroneal tendinitis to the claim. She is back with me after the MRI and we will move forward. At this point though I consider her temporarily yet totally disabled.

{¶ 43} 14. Following a March 16, 2012 examination, Dr. Cummings issued a progress note, stating:

PROGRESS NOTE- March 16, 2012: States left ankle is the same. Hearing scheduled for 3/26/12. Had an [appointment] with Dr. Berlet on 2/20/12. MRI was approved. Had MRI on 3/5/12. Next [appointment] for results of MRI is 4/3/12. Had an IME 2/21/12. No new testing since last visit. Pain level today is 5/10.

REVIEW OF SYSTEMS:

Constitutional: POSITIVE for abnormal gait, trouble sleeping.
Musculoskeletal: POSITIVE for joint pain, joint stiffness, muscle weakness.
Neurological: POSITIVE for burning sensation. Negative for numbness, tingling.

EXAMINATION:

Constitutional: Donna is right handed. She appears to be healthy. Her body habitus is mesomorphic. Her complexion

is normal. She looks to be her stated age. Donna is able to move with difficulty.

Left Foot and Ankle: Dorsiflexion can be performed with pain. Eversion can be preformed with pain. Inversion can be performed with pain. Dorsalis pedis pulse is present. Posterior tibialis pulse is present. Range of motion is limited. Swelling is present over the lateral maileolus. Tenderness is present over the peroneal tendons. No change.

Lumbar Spine: Bruising is absent. Movement of the low back causes discomfort. Range of motion is mildly limited: Tenderness to palpation is present over the right paraspinous muscles.

DIAGNOSIS: 1. Fracture, ankle, lateral malleolus (closed), left (824.2).

DISCUSSION: Due to Donna's progressive pain symptoms, she has been restricted to a seated job assignment.

PLAN OF CARE: Dr. Gregory Berlett [sic] has recommended surgery. C-9 submitted and denied. (2-17). Patient had an IME on 1/18. Ortho F/U scheduled. Patient recently had a repeat MRI per Dr. Berlet.

MEDICAL CAUSATION: The cause of this problem is related to work activities.

RECOMMENDED WORK STATUS: Donna's recommended work status is restricted duty. The effective date for this work status is 3/16/2012.

(Emphasis sic.)

{¶ 44} 15. Following the March 16, 2012 examination, Dr. Cummings completed another C-84 and MEDCO-14. The C-84 extends the period of TTD to a May 1, 2012 estimated return-to-work date. Both documents restrict claimant to a "[s]eated job assignment."

{¶ 45} As earlier noted, the C-84 form asks the physician to "[l]ist diagnosis(es) for allowed conditions being treated, which prevent return to work." In response, Dr. Cummings wrote: "1. Fracture, ankle, lateral malleolus (closed), left (824.2)."

{¶ 46} 16. Following a March 26, 2012 hearing, a district hearing officer ("DHO") issued an order granting TTD compensation beginning November 29, 2011. The DHO's order explains:

> It is the order of the District Hearing Officer that the C-86 Motion, filed by Injured Worker on 01/17/2012, is granted to the extent of this order.
>
> It is the order of the District Hearing Officer that payment of temporary total disability compensation is granted from 11/29/2011 through 03/25/2012 and to continue upon the submission of appropriate proof of disability. Prior to 11/23/2011 the Injured Worker was working with restrictions of no lifting above ten pounds and occasional standing and walking. In his MEDCO-14 report dated 11/23/2011 Dr. Cummings restricted the Injured Worker to a seated job assignment, which the Employer made available on 11/28/2011 but not thereafter. The period of temporary total disability is supported by Dr. Cummings' MEDCO-14 reports and his C-84 reports dated 12/23/2011 and 02/17/2012. The District Hearing Officer also relies on Dr. Wolfe's 01/18/2012 report in which he opines that the Injured Worker is not physically capable of returning to her former position of employment, and the lack of any persuasive evidence that the allowed conditions have reached maximum medical improvement.

{¶ 47} 17. Relator administratively appealed the DHO's order of March 26, 2012.

{¶ 48} 18. Following a May 10, 2012 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order of March 26, 2012. The SHO's order explains:

> Temporary total disability compensation is granted from 11-29-11 through 5-1-12, and to continue upon submission of medical proof.
>
> This decision is based on the 11-23-11 treatment record from Dr. Cummings, the 2-20-12 treatment record from Dr. Berlet, the 11-23-11, 12-23-11, 2-17-12, and 3-16-12 Medco-14 reports from Dr. Cummings, and the 12-23-11, 2-17-12, and 3-16-12 C-84 reports from Dr. Cummings.
>
> The 11-23-11 treatment record indicates that the injured worker was working on restrictions but was still required to do a lot of standing and walking that was causing an exacerbation as well as low back problems, which led the Doctor to restrict the injured worker to seated work only.

There is no indication from the employer that seated work was made available from 11-26-11 through 5-1-12.

{¶ 49} 19. On June 2, 2012, another SHO mailed an order refusing relator's administrative appeal.

{¶ 50} 20. On August 14, 2012, the three-member commission mailed an order denying reconsideration.

{¶ 51} 21. On October 10, 2012, relator, Staples the Office Superstore East, Inc., filed this mandamus action.

Conclusions of Law:

{¶ 52} The commission, through its SHO, awarded TTD compensation based in part upon the November 23, 2011 report of Dr. Cummings who restricted claimant to a "[s]eated job assignment" based in part upon "low back pain" attributed "to the amount of standing and walking [claimant] is required to do." The SHO also stated reliance upon the C-84s and MEDCO-14s of Dr. Cummings. The SHO stated further reliance upon the report of Dr. Berlet.

{¶ 53} Three issues are presented: (1) is the commission's reliance upon the November 23, 2011 report of Dr. Cummings foreclosed by the absence of a claim allowance for a low back condition, (2) do the progress reports of Dr. Cummings mandate evidentiary elimination of his C-84s and MEDCO-14s on grounds that allegedly they are inconsistent with the conditions discussed in the progress reports, and (3) given that commission reliance upon the reports of Dr. Cummings is foreclosed, can a portion of the award be saved by the commission's reliance upon the report of Dr. Berlet?

{¶ 54} The magistrate finds: (1) the commission's reliance upon the November 23, 2011 report of Dr. Cummings is foreclosed by the absence of a claim allowance for a low back condition, (2) the progress reports of Dr. Cummings mandate evidentiary elimination of his C-84s and MEDCO-14s, and (3) a portion of the award cannot be saved by the commission's reliance upon the report of Dr. Berlet.

### The First Issue

{¶ 55} A newly identified condition that may be related to an industrial injury must be formally recognized in the claim if that condition is to become the basis for compensation. *State ex rel. Jackson Tube Servs., Inc. v. Indus. Comm.,* 99 Ohio St.3d 1,

2003-Ohio-2259. Moreover, the claimant cannot "circumvent additional allowance by simply asserting a relationship to the original injury." *State ex rel. Sears Roebuck Co. v. Indus. Comm.*, 131 Ohio St.3d 45, 2011-Ohio-6525, ¶ 29, quoting *Jackson Tube* at ¶ 25. Case law sets forth two exceptions to this well-settled law, but the exceptions do not assist the claimant in this action.

{¶ 56} *State ex rel. Miller v. Indus. Comm.*, 71 Ohio St.3d 229 (1994), presents one exception to the general rule that is instructive here. At issue in *Miller* was authorization of a supervised weight-loss program where obesity had worsened subsequent to the industrial injury. The *Miller* court rejected the commission's position that formal recognition of "obesity" as an allowed condition in the claim is a prerequisite for authorization of the weight-loss program. The *Miller* court gave several reasons for its position. First, because obesity is a generalized condition, it cannot be restricted to a specific body part or parts as R.C. 4123.84 envisions. Second, a claimant who is overweight when injured generally cannot maintain the requisite causal relationship for an additional allowance. This would make the pre-existence of obesity, in and of itself, dispositive.

{¶ 57} Thus, the *Miller* court held that additional allowance of obesity is not a prerequisite to consideration of payment for a weight-loss program. Rather, the requisite causal relationship question is to be addressed by the three-step test set forth in the *Miller* decision: (1) are the medical services reasonably related to the industrial injury, that is, the allowed conditions, (2) are the services reasonably necessary for treatment of the industrial injury, and (3) is the cost of such service medically reasonable?

{¶ 58} The other exception to the rule tying compensability to formal allowance is set forth in *Jackson Tube*. In turn, *Jackson Tube* is succinctly summarized by the court in *Sears*, as follows:

> In *Jackson Tube*, the claimant's workers' compensation claim had been allowed for a torn rotator cuff. Continuing shoulder problems, however, as well as a failure to have a shoulder arthroscopy performed, prompted his doctor to express concern that "substantial pathology [was] still being missed," most likely a secondary tear. *Id.* at ¶ 14. For these reasons, he sought permission both to perform exploratory surgery to determine the cause of claimant's persistent symptoms and to fix the problem he found.

The employer objected to the procedure, arguing that the shoulder conditions identified by the doctor as the potential source of claimant's continuing problems had not been allowed in the claim. The commission allowed the surgery nonetheless, and we upheld that decision. We acknowledged that the issue was a difficult one, with compelling arguments being made by both sides:

On one hand, claimant could not move for additional allowance beforehand, since without the surgery, the problematic conditions could not be identified. On the other hand, self-insured JTS questions its recourse when ordered to pay for surgery that ultimately reveals any conditions to be nonindustrial. It also fears that payment could be interpreted as an implicit allowance of all of the conditions in the postoperative diagnosis. *Id.* at ¶ 22.

Addressing the latter concern first, we stressed that an employee could not "circumvent additional allowance by simply asserting a relationship to the original injury. The problem in this case, however, is that because any conditions are internal, claimant could not know what conditions to seek additional allowance for without first getting the diagnosis that only surgery could provide." *Id.* at ¶ 25.

We were additionally persuaded by the physician's consistent assertion that whatever condition was the source of the claimant's shoulder complaints, that condition was related to the industrial injury. We also noted that claimant's doctor had indicated that irrespective of any other conditions that may be contributing to claimant's problems, the allowed condition of torn rotator cuff had to be surgically repaired. To deny the surgery simply because more conditions could be found would conflict with our earlier decision in *State ex rel. Griffith v. Indus. Comm.* (1999), 87 Ohio St.3d 154, 718 N.E.2d 423. We closed, however, by clarifying that if other shoulder conditions were indeed found, further treatment or compensation could not be authorized unless the conditions were then additionally allowed in the claim.

*Id.* at ¶ 26-30.

{¶ 59} Here, that Dr. Cummings suggests a causal relationship between the industrial injury and claimant's low back pain does not circumvent the general rule tying compensability to formal allowance. That is, that Dr. Cummings relates the lower back

pain to the amount of standing and walking claimant is required to do on her job does not suffice to establish compensability for the low back pain in the absence of a formal allowance for the low back condition.

{¶ 60} Here, the commission argues that the commission can award TTD compensation based upon the low back pain because, allegedly, the low back pain is but a symptom of the allowed conditions. The magistrate disagrees with this argument.

{¶ 61} Stating that the low back pain is a symptom of the allowed conditions is but another way of stating that the low back pain is causally related to the allowed conditions. As earlier noted, the claimant cannot circumvent additional allowance by simply asserting a relationship to the original injury. *Sears*; *Jackson Tube*. Even if the lower back pain is a symptom of the allowed ankle conditions, that symptom is not located at the ankle, but at another body part of claimant's anatomy. Thus, the absence of a claim allowance for the lower back forecloses reliance upon the pain at the lower back in awarding compensation. *See State ex rel. Meridia Hillcrest Hosp. v. Indus. Comm.,* 74 Ohio St.3d 39 (1995), (claimant unsuccessfully argued that her pregnancy complications were symptoms of her allowed abdominal conditions and therefore need not be allowed for her to obtain compensation).

### The Second Issue

{¶ 62} A claimant must always show the existence of a direct and proximate causal relationship between his or her industrial injury and the claimed disability. *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452 (1993). Non-allowed medical conditions cannot be used to advance or defeat a claim for compensation. *Id.* The mere presence of a non-allowed condition in a claim for TTD compensation does not in itself destroy the compensability of the claim, but the claimant must meet his burden of showing that an allowed condition independently caused the disability. *State ex rel. Bradley v. Indus. Comm.,* 77 Ohio St.3d 239, 242 (1997).

{¶ 63} Here, respondents assert that the commission relied upon medical evidence showing that the allowed conditions alone are independently disabling.

{¶ 64} For example, with respect to the December 23, 2011 C-84, which is the earliest of the C-84s at issue, Dr. Cummings certified that disability began on November 28, 2011 due to the allowed conditions which he states to be a closed fibula

fracture and a left ankle sprain (while the industrial claim is not allowed for a left ankle sprain, relator does not argue that the C-84 lacks evidentiary value for that reason). Respondents would argue that, because Dr. Cummings has based his disability certification solely upon the ankle injury, the C-84 is some evidence that the ankle injury alone is independently disabling.  Respondents would no doubt add that the December 23, 2011 C-84 does not, on its face, attribute disability to low back pain.

{¶ 65} With respect to the February 17 and March 16, 2012 C-84s at issue, Dr. Cummings certified that disability began on November 28, 2011 due to the allowed conditions which Dr. Cummings described as "Fracture, ankle, lateral malleolus (closed), left (824.2)."  (Relator does not argue that Dr. Cummings incorrectly identified the allowed conditions on the February 17 and March 16, 2012 C-84s.  Thus, respondents would argue that, because Dr. Cummings has based his disability certification solely upon the ankle injury, the February 17, 2012 and March 16, 2012 C-84s are some evidence that the ankle injury alone is independently disabling.

{¶ 66} The Supreme Court of Ohio has held that a medical report can be so internally inconsistent that it cannot constitute some evidence supporting a commission decision.  *State ex rel. Lopez v. Indus. Comm.,* 69 Ohio St.3d 445 (1994).  By extension, the court held in *State ex rel. M. Weingold & Co. v. Indus. Comm.,* 97 Ohio St.3d 44, 2002-Ohio-5353, that substantial inconsistencies between two C-84s generated by the same examination compel the same result as in *Lopez.*

{¶ 67}  This court followed the *M. Weingold* rationale in *State ex rel. Genuine Parts Co. v. Indus. Comm.,* 160 Ohio App.3d 99, 2005-Ohio-1447, ¶ 4 (10th Dist.), wherein this court stated:

> Contrary to the respondent's contention, Dr. Snell's C-84 is not evidence upon which the commission could rely because the C-84 is inconsistent with Dr. Snell's examination notes. Recognizing this inconsistency does not require the weighing of evidence as respondent argues. We give no greater weight to either the C-84 or the examination notes. We simply find, as did the magistrate, that they relate to the same examination and that they are inconsistent. The fact that the inconsistency arises from statements contained in two different documents rather than in one report is not significant. Again, it is clear that both documents were prepared by Dr. Snell and relate to the same physical

examinations. As the magistrate notes, the same rationale was applied in *State ex rel. M. Weingold & Co. v. Indus. Comm.,* 97 Ohio St.3d 44, 2002-Ohio-5353, which involved substantial inconsistencies between two C-84s arising from the same examination.

{¶ 68} In *Genuine Parts,* Dr. Snell certified the allowed lumbosacral sprain as the cause of TTD when his office notes failed to mention a lumbosacral sprain but did discuss serious disallowed and non-allowed conditions.

{¶ 69} The *Genuine Parts* rationale compels the elimination of Dr. Cummings' C-84s and MEDCO-14s from evidentiary consideration.

{¶ 70} All of the C-84s and MEDCO-14s at issue relate not only to the examination directly corresponding to their issuance, but also to the November 23, 2011 examination and progress report where Dr. Cummings indicates that the restriction to a "[s]eated job assignment" is the result of low back pain. All of the C-84s and MEDCO-14s restrict claimant to a "[s]eated job assignment" which relates back to the November 23, 2011 examination and progress report at which the low back pain is identified.

{¶ 71} That is to say, while four examinations generated the C-84s and MEDCO-14s at issue, those medical reports uniformly restrict claimant to a "[s]eated job assignment"—a restriction that began with the November 23, 2011 examination and progress report that attributes disability, at least in part, to a non-allowed condition. Thus, the *Genuine Parts* rationale compels the elimination of Dr. Cumming' C-84s and MEDCO-14s from evidentiary consideration.

### The Third Issue

{¶ 72} The third issue, as previously noted, is whether a portion of the award can be saved by the commission's reliance upon the February 20, 2012 report of Dr. Berlet.

{¶ 73} As earlier noted, in his February 20, 2012 report, Dr. Berlet opines: "I consider her temporarily yet totally disabled." He further states: "So where we are now is she is no longer able to work."

{¶ 74} As a general rule, a doctor cannot offer an opinion on a claimant's extent of disability for a period that precedes the doctor's examination of the claimant. *State ex rel. Foor v. Rockewell Internatl.,* 78 Ohio St.3d 396, 399 (1997); *State ex rel. Foreman v. Indus. Comm.,* 64 Ohio St.3d 70, 72 (1992); *State ex rel. Abner v. Mayfield,* 62 Ohio St.3d

423 (1992); *State ex rel. Kroger Co. v. Morehouse,* 74 Ohio St.3d 129, 133 (1995); and *State ex rel. Case v. Indus. Comm.,* 28 Ohio St.3d 383, 387 (1986).

{¶ 75} A doctor who does offer an opinion as to the claimant's extent of disability that is retrospective of the date of his examination is treated as a non-examining doctor as to his retrospective opinion. Under such scenario, the doctor must observe certain safeguards if his retrospective opinion is to be accepted as evidence in a commission proceeding. *State ex rel. Bowie v. Grater Cleveland Regional Transit Auth.,* 75 Ohio St.3d 458 (1996). If the doctor's retrospective opinion is to be relied upon by the commission as some evidence, it is imperative that the doctor has reviewed all of the relevant medical evidence generated prior to the date of the examination from which the retrospective opinion is rendered.

{¶ 76} Dr. Berlet performed a one time only examination on February 20, 2012. He did not offer an opinion as to claimant's extent of disability that is retrospective of the date of his examination. Consequently, Dr. Berlet's report cannot constitute evidence of TTD for the period prior to the February 20, 2012 examination date.

{¶ 77} While Dr. Berlet's report can be viewed as containing an opinion that, at the time of the examination, claimant was medically unable to return to her former position of employment based upon the allowed ankle conditions, Dr. Berlet did not prospectively opine as to the estimated length of time the disability would last. Unlike Dr. Cummings, Dr. Berlet did not complete a C-84 or a MEDCO-14. The failure to offer an estimated return-to-work date or to prospectively opine as to the estimated duration of the disability is problematical.

{¶ 78} The *Genuine Parts* case is again instructive. In that case, the commission relied upon the C-84 of Dr. Snell to award TTD compensation. The commission's order also stated that Dr. Smith's report is persuasive "but not technically relied upon." *Genuine Parts* at ¶ 36. Later, the commission's order stated reliance upon Dr. Smith. After elimination of Dr. Snell's C-84 from evidentiary consideration, this court was faced with the question of whether Dr. Smith's report provided evidence of TTD.

{¶ 79} However, Dr. Smith had not certified prospectively a specific period of TTD. This court rejected the magistrate's recommendation that this court issue a writ that

orders the commission to take additional evidence from Dr. Smith as to the period of TTD. This court explained:

> Dr. Snell's C–84 was not evidence upon which the commission could rely because it conflicted with his office notes. It is unclear whether the commission relied upon Dr. Smith's report. Regardless of whether the commission relied upon Dr. Smith's report, the report is not sufficient to support an award of TTD compensation. Therefore, there simply is insufficient evidence to support an award of TTD.

*Id.* at ¶ 6.

{¶ 80} Here, the report of Dr. Berlet presents a circumstance similar to the circumstance presented by Dr. Smith's report in *Genuine Parts*. Because Dr. Berlet fails to opine as to any period of disability prospective of his February 20, 2012 examination, his report provides no evidence of TTD.

{¶ 81} Thus, the commission's reliance upon the report of Dr. Berlet does not save a portion of the award that might have begun as of the date of Dr. Berlet's examination.

{¶ 82} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate the May 10, 2012 order of its SHO that awards TTD compensation beginning November 29, 2011, and to enter an order that denies the request for TTD compensation.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

> Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).